UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

STEVEN WILLIAM PAUL,

        Plaintiff,

  v.

JOHN DEERE HORICON WORKS,

        Defendant.

Case No. 19-cv-746-pp

---

**ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS (DKT. NO. 16)**

---

The plaintiff filed a complaint against his employer alleging discrimination based on disabling medical condition and on his "sexuality." Dkt. No. 1. Magistrate Judge Nancy Joseph ordered the plaintiff to submit his EEOC notice of right to sue by June 11, 2019. Dkt. No. 3. When the plaintiff failed to comply, Judge Joseph denied his motion to proceed without prepayment of the filing fee and issued a recommendation that the case be dismissed without prejudice for failure to prosecute. Dkt. No. 6. The plaintiff filed an objection and attached the notice of right-to-sue, explaining that he never received Judge Joseph's order. Dkt. No. 7. Judge J.P. Stadtmueller denied the recommendation and returned the case to Judge Joseph. Dkt. No. 8. Judge Joseph granted the plaintiff's motion to proceed without prepayment of the filing fee and found, "at the very least," that "his employer did not make reasonable accommodations for his known disability in violation of the ADA."

1

Dkt. No. 9 at 3. After the clerk of courts reassigned the case to this court, the defendant filed a partial motion to dismiss. Dkt. No. 17.

The plaintiff has failed to respond even though the defendant filed an amended certificate of service showing that it served the plaintiff with the pleading at 210A Lake St., Beaver Dam, WI—the same address where the EEOC sent the right-to-sue notice, the same address used by the plaintiff in the complaint and the same address that appears on the docket. The court will grant the defendant's partial motion to dismiss and enter a scheduling order.

**I.      Legal Standard Governing a Motion to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint on the basis that the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint must contain a short and plain statement showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this language to require that the plaintiff plead "enough facts to state a claim for relief that is plausible on its fact." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The allegations in the complaint must rise above the speculative level. Twombly, 550 U.S. at 555. All factual allegations and any reasonable inferences must be construed in the light most favorable to the nonmoving party. Price v. Bd. of Educ. of City of Ch., 755 F3d 605, 607 (7th Cir. 2014).

**II.     The Complaint**

The plaintiff attached to his complaint a one-page summary of his allegations and the Statement of Discrimination that he had filed with the EEOC. Dkt. No. 1 at 6-15. He alleges that the defendant discriminated against him, harassed him (and sexually harassed him), assaulted his character and denied him the right to work because of his disability. Id. at 6.

The Statement of Discrimination lays out events in chronological order. Id. at 7. The plaintiff began working for John Deere at Horicon Works on February 13, 2013 as an assembler. Id. He trained for and became a welder in the spring of 2015. Id.

In January 2015, the plaintiff got sick and missed time because of his condition. Id. In the middle of February 2015, he received a diagnosis of Ménétrier's disease and the plaintiff began receiving periodic chemotherapy treatments at the end of February and early March of 2015. Id. The side effects of chemotherapy made it necessary for the plaintiff to take some time of work, although the plaintiff alleges that the time off was minimal. Id.

In November of 2015, the plaintiff began to pursue the selection process for an electrical/industrial apprenticeship set up by the Department of Workforce Development and the defendant. Id. at 8. The DWD and the defendant selected the plaintiff for the apprenticeship, which began in February of 2016.  Id. From that time forward, the plaintiff worked full-time hours, including overtime, working twelve-hour days (sometimes more than seventy hours a week), except for the reduced hours described below. Id.

3

On October 18, 2016, Mark Czerwisnki, the defendant's Labor Relations Administrator, met with the plaintiff to discuss the apprenticeship and his absences. Id. Czerwinski noted that the plaintiff had a missed a few days over the past month because of his medical condition; Czerwinski said that he was going to take a "stern and harsh approach rather than coddling." Id. He said "this may not be the right place or time in your life due to your illness." Id. Going forward, Czerwinski required the plaintiff to contact four people—Czerwinski, the maintenance manager, the plaintiff's supervisor, and health services—if he was going to be absent; the plaintiff says no other employee was subject to this requirement. Id. Czerwinski accused the plaintiff of "working the system" by asking his supervisor if there were hours available on Saturdays. Id. The plaintiff alleges that Czerwinski's tone was "loud, demeaning and arrogant." Id. The plaintiff subsequently stopped asking to work on weekends because he didn't want to be accused of "working the system," but this meant he missed out on apprenticeship hours and on pay. Id.

According to the plaintiff, Czerwinski and Brian Polford, from Labor Relations, met with him on February 24, 2017 and told him to quit the apprenticeship or take a suspension. Id. at 9. They gave him until Monday to decide (and that if he didn't decide by Monday, the defendant would terminate the apprenticeship), but told him not to go to school that day. Id. The plaintiff could not reach the DWD supervisor or the union representatives. Id.

The plaintiff sent an email to the DWD supervisor on February 27, 2017, asking to talk about the choices presented to him. Id. He spoke with the DWD

4

supervisor that same day on the phone, as well as speaking with three men from the union, all of whom told the plaintiff that he should have continued to go to school despite Czerwinski's instruction. Id. The DWD supervisor also told the plaintiff that he was still active in the apprenticeship. Id. Later, however, the DWD supervisor spoke to Czerwinski, who told her that he wanted to "pause" the apprenticeship because of the plaintiff's health. Id. The DWD supervisor conveyed this remark to the plaintiff. Id.

Czerwinski met with the plaintiff on February 28, 2017, and Czerwinski told the plaintiff that Czerwinski would have terminated the plaintiff had the plaintiff still been in the probationary period of the apprenticeship; Czerwinski said that the defendant no longer had that option. Id. at 9-10. Czerwinski alleged that the plaintiff wasn't retaining information, and that the plaintiff must pause the apprenticeship or it would be "off the table in the future." Id. at 10. This happened at a meeting of the union shop committee; in front of the members, Czerwinski told the plaintiff that it was time to "man up" and make a decision. Id.

On March 1, 2017, the plaintiff sent the maintenance manager of Horicon Works an email saying that he was leaving early and could not attend the weekly meeting at 10:00 a.m.; he asked for time to make up the meeting and discuss recent developments relating to the apprenticeship. Id. Around 9:30 that morning, the plaintiff followed up in person, telling the maintenance manager about his health situation, explaining that he normally didn't miss work or meetings and expressing that he felt badly about the situation. Id. The

5

maintenance manager told the plaintiff that as a manager of maintenance, he needed "healthy people that show up every day," or something like that. Id.

The next day the plaintiff sent the DWD Supervisor an email about the "negative treatment," stating that he felt bullied to take the "unassignment from the apprenticeship due to his medical condition." Id. at 10. The plaintiff described his work environment as toxic. Id. The plaintiff also sent the union an email to let it know that he used a vacation day and would do so again because the work environment had become hazardous to his health. Id. The plaintiff related that he was experiencing anxiety, confusion and difficulty coping. Id.

On March 8, 2017, the plaintiff sent an email to Jeffrey Stafford asking to leave work after eight hours because he was disappointed and frustrated by Czerwinski's behavior after the weekly apprenticeship meeting. Id. at 11. Czerwinski then sent an email to union shop committee members Stone and Miller with the subject line "Steve Paul Unassignment." Id. He asked Stone and Miller to present the plaintiff with the conditions of his "unassignment," and to ensure that he understood how to have it lifted and how he could resume the apprenticeship. Id. The "unassignment" began February 27, 2017 and would continue until the plaintiff could work an average of four out of five work-week days a week (Monday through Friday) over an eight-week span. Id. In other words, the plaintiff had to be in school or at the factory for thirty-two out of forty work-week days, and had to work at least eight hours to constitute a day of work. Id. The apprenticeship would resume the week after any eight-week

6

span in which the plaintiff met these conditions. Id. These conditions precluded weekend work.

The plaintiff alleges that the attitudes and treatment he received after October of 2016, the "unassignment" of the apprenticeship and the unlawful conditions put on him in the apprenticeship caused significant emotional distress and made it difficult for him to succeed. Id. at 12. He says that he took leave periodically from March 6, 2017 through the end of March because of anxiety. Id. On March 27, 2017, plaintiff's counsel wrote to the defendant's corporate office regarding the events and asked for an accommodation to permit him to return to work. Id.

On March 30, 207, an employee from the defendant's Disability Services sent the plaintiff a letter informing him that the defendant was moving the plaintiff from Weekly Indemnity (WI) to Long Term Disability (LTD). Id. The plaintiff tried to return to work on April 3, 2017, but his badge did not work; neither his supervisor nor the company nurse knew anything about it. A coworker told him he was not supposed to be there and that the plaintiff had been put on LTD. Id. The plaintiff spoke with a union member, who knew nothing about why the defendant had put the plaintiff on LTD. Id.

On April 5, 2017, the plaintiff and his union representatives met with Brian Polford, manager of the defendant's labor relations department,[1] and a

---

[1] On page 6 of the complaint—the page the plaintiff prepared himself—the plaintiff refers to "Brian Pullford Manager of Labor Relations at [John Deere]." Dkt. No. 1 at 6. Pages 7-15 of the complaint—the Statement of Discrimination drafted by the plaintiff's former attorney—refer to Mr. "Polford."

7

Mr. Zolinski. Id. The plaintiff and the union representatives asked who'd put the plaintiff on LTD and why. Id. Polford said that *he* put the plaintiff on LTD because "in his judgment" LTD was appropriate, given that the plaintiff had missed ten days of work and allegedly had used up fifty-two weeks of weekly indemnity (WI) benefits. Id. Polford stated that he was required by WI policy to put the plaintiff on LTD. Id. The plaintiff disagreed, saying that he never asked to use WI benefits and that he had not used fifty-two weeks of WI benefits because he missed work only intermittently. Id. at 12-13. The plaintiff also disagreed that the defendant's policies required him to be put on LTD. Id. at 13. Polford responded, "At John Deere, we offer full-time employment, not part time. You can come back when you can work full time." Id. The defendant then placed the plaintiff in a no-work status. Id.

The plaintiff reads the defendant's WI policy to say that an employee is *eligible* for LTD if he was out of work for fifty-two weeks under the WI policy and still can't return to work. Id. He insists that it doesn't require an employee to go on LTD. Id. The plaintiff maintains that he wasn't absent for fifty-two consecutive weeks; he took off intermittently and received WI benefits, but he did not wish to be or ask to be put on LTD, and he was willing and able to keep working. Id.

The defendant did not respond to counsel's letter dated March 27 until May 2, 2017; at that point, it stated that it would respond in the future after it had a better understanding. Id.

8

In November 2017, the plaintiff contacted his union about filing a grievance over not being allowed to work. Id. A union rep told the plaintiff that he'd had an email from a Jeff Kennedy (who'd replaced Polford at some point after the defendant put the plaintiff on no-work status). Id. Kennedy had asked the union to set up a meeting with the plaintiff to talk about the plaintiff returning to work. Id. On December 20, 2017, Mr. Kennedy met with the plaintiff (the union rep was present) and asked the plaintiff to identify the specific accommodations he needed to return to work. Id. The plaintiff showed Kennedy a doctor's note from November 20, 2017 saying that the plaintiff could return with no restrictions. Id. Kennedy indicated that the defendant already had that note. Id. The plaintiff said he would need the same accommodations he'd needed before: occasional time off for treatment and "sometimes" time off for side effects (which might be as little as leaving work an hour or two early). Id. at 14. Kennedy said the plaintiff needed to be specific about the amount of time he'd need off; he also said he'd get the paperwork for the plaintiff to complete. Id. at 13-14.

The plaintiff didn't hear anything until January 23, 2018, and then he heard from the union rep, not Kennedy. Id. at 14. The rep said Kennedy no longer needed paperwork, that "they are ready to bring [the plaintiff] back to work." Id. The plaintiff and the union rep scheduled a meeting with Kennedy for January 29, 2018. Id.

At the January 29 meeting, Kennedy told the plaintiff he could return to work on February 5, 2018, but that if the plaintiff needed to miss work, he

9

would need to use FMLA leave and that the defendant would allow him to use FMLA leave "for his medical condition even though he had been out of work to date." Id. The plaintiff asked about reinstating his leave, benefits and compensation for the period when he was out of work. Id. Kennedy said the defendant was not going to do that. Id.

In his final paragraph of the Statement of Discrimination, the plaintiff summarized his claim as follows:

> John Deere is violating the law by changing Mr. Paul's status in the apprenticeship because of his absences caused by his disabilities, failing to accommodate his disability and failing to engage in the interactive process to find accommodations, treating him differently because of his disability by imposing conditions on him that are not imposed on other members of the apprenticeship, and by the negative treatment and discouragement of his supervisors, and by putting him on leave which prevents him from working, and delaying his return to work when it knew that Mr. Paul was able to do so without [sic] or without accommodation.

Id.

### III. Analysis

The defendant asks the court to dismiss all the ADA claims that occurred before the governing 300-day limitations period. In addition, the defendant argues the sex-based discrimination claims must be dismissed (1) for failure to exhaust the administrative process, (2) as time-barred, and (3) for failure to state a claim.

####   A.   ADA: 300-Day Limitations Period

The Americans with Disabilities Act incorporates the same timeliness requirements as Title VII. In Wisconsin, a plaintiff must file a Charge of Discrimination with the EEOC or the state Equal Rights Division within 300

10

Case 2:19-cv-00746-PP   Filed 04/15/20   Page 10 of 18   Document 22

days from the occurrence of an allegedly discriminatory act. Stepney v. Naperville Sch. Dist. 203, 392 F.3d 236, 239 (7th Cir. 2004) ("Because the ADA's enforcement provision expressly incorporates § 2000e-5 of Title VII, claims for discrimination under the ADA also must be filed within 300 days 'after the alleged unlawful employment practice occurred.'") (quoting 42. U.S.C. § 2000e-5(e)(1), incorporated by 42 U.S.C. § 12117(a)). The plaintiff filed his Charge of Discrimination on January 31, 2018.[2] Dkt. 17-1. That means the plaintiff may proceed on any allegations about conduct occurring on or after April 6, 2017.

The plaintiff has alleged conduct that occurred after April 6, 2017[3]; however, he also has alleged conduct that occurred *before* that date. For example, on October 18, 2016—before the April 6, 2017 date—Czerwisnki told the plaintiff he may not be in the right time or place because of his illness. On February 24, 2017—before the April 6, 2017 date—Czerwinski and Polford met

---

[2] The defendant attached the plaintiff's Charge of Discrimination to the motion to dismiss. Ordinarily, a district court must convert the motion to dismiss to one for summary judgment if it considers documents outside the four corners of the complaint. Tierny v. Vahle, 304 F.3d 734, 738 (7th Cir. 2002). However, documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the complaint and are central to the plaintiff's claim. Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993). Because the plaintiff referenced the EEOC charge in the complaint (Dkt. No. 1 at 6) and is a prerequisite for filing the ADA and Title VII claims, the court need not convert the motion to dismiss to a motion for summary judgment.

[3] The defendant acknowledges that the plaintiff has claimed the defendant "violated his rights under the ADA in early 2018, when he briefly returned to work before electing to take paid medical leave." Dkt. No. 17 at 2, n.2. While the defendant denies those allegations, it has not moved to dismiss them.

11

with the plaintiff and gave him two options: quit the apprenticeship or take the suspension. Czerwinski suspended the plaintiff from the apprenticeship program in March of 2017—before the April 6 date. Further, the defendant allegedly forced the plaintiff to take long term disability and barred him from the workplace on April 3 and 5 of 2017—just before the April 6 date. The defendant argues that each of these events—lost training, lost pay, and failure to reinstate—was a discrete act and therefore time barred.

The Seventh Circuit applies a continuing violation theory to allow a plaintiff to obtain relief for a time-barred act. Place v. Abbott Labs, 215 F.3d 803, 808 (7th Cir. 2000). The theory allows a plaintiff to reach back to obtain relief for an act that occurred outside the statute of limitations by linking it as one continuous act with a discriminatory act that took place within the limitations period. Id. "A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period." Id. (quoting Dasgupta v. Univ. of Wis. Bd. of Regents, 121 F.3d 1138, 1139 (7th Cir. 1997)). The doctrine applies to claims involving an ongoing policy rather than discrete acts of discrimination. Teague v. Northwestern Memorial Hosp., 2012 WL 3608619, *4 (7th Cir. Aug. 23, 2012).

Courts have held that the continuing violation theory is not triggered where the time-barred incident, viewed alone, should have triggered an employee's awareness of and duty to assert his rights. Simpson v. Borg-Warner

12

Auto, Inc., 196 F.3d 873, 875 (7th Cir. 1999). Nor does it apply when the continuing harm results from a discrete act. Bass v. Joliet Public Sch. Dist. No. 86, 746 F.3d 835, 839 (7th Cir. 2014).

The plaintiff has not responded to the motion to dismiss, let alone the defendant's argument that the conduct preceding April 6, 2017 constituted discrete acts rather than a continuing violation. In the complaint, the plaintiff alleges that Czerwinski met with him on October 18, 2016 to discuss his apprenticeship and absences. Dkt. No. 1 at 7. At that point, Czerwinski allegedly said that it may not be the right place or time in his life due to illness. Id. The plaintiff says that Czerwinski was loud, demeaning and arrogant and that the plaintiff stopped asking to work the weekends because he didn't want Czerwinski to think he was "working the system." Id. It's not clear that the plaintiff knew at that point that he may have a claim. However, by February 24, 2017, Czerwinski had told the plaintiff that he had to quit or take a suspension and had told him not to go to school. Id. The plaintiff reached out to his DWD supervisor and union representatives and was told that Czerwinski wanted to "pause" or "unassign the apprenticeship because of the plaintiff's health. On March 1, the manager of maintenance told the plaintiff that the maintenance manager needed healthy people to show up every day. Id. And by March 2, the plaintiff had told the DWD supervisor that he was being bullied and treated poorly because of his medical condition. He was "unassigned" on March 8.

13

To the extent that the plaintiff is bringing a claim for disability discrimination or failure to accommodate under the ADA, the plaintiff has identified discrete acts, such as the decision to remove him from the apprenticeship program. The plaintiff may proceed with this claim based on the conduct that occurred *after* April 6, 2017. While the earlier acts may be time-barred, however, the court notes that the plaintiff may use them as prior acts background evidence in support of his timely claim. Malin v. Hopira, Inc., 762 F.3d 552, 561 (7th Cir. 2014).

The plaintiff may be trying to bring a hostile work environment claim. "A hostile-work-environment claim requires proof of four elements: (1) the plaintiff's workplace was both subjectively and objectively offensive; (2) the plaintiff's [disability] was the cause of the harassment; (3) the harassment was severe or pervasive; and (4) there is a basis for employer liability." Lord v. High Voltage Software, Inc., 839 F.3d 556, 561 (7th Cir. 2016), cert. denied, ___ U.S. ___, 137 S. Ct. 1115 (2017). On page six of the complaint, the plaintiff says he was harassed. The Statement of Claim, drafted by his former attorney and attached to the complaint, refers to negative treatment. A hostile work environment claim focuses on conduct that occurs over a series of days or perhaps years rather than a discrete act. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002). Such a claim is predicated on the fact that a series of separate acts "collectively constitute one employment practice." Id. at 117; Ford v. Marion Cty. Sheriff's Office, 942 F.3d 839, 851 (7th Cir. 2019).

To the extent that the plaintiff is bringing a hostile work environment claim under the ADA, the court does not find that claim time-barred.

In the ERD complaint, the plaintiff's former attorney checked the box indicating that the plaintiff had opposed workplace discrimination. Dkt. No. 17-1 at 2. To state a claim for retaliation, the plaintiff "must allege: 1) a statutorily protected activity; 2) an adverse employment action; and 3) a causal link between the protected activity and the employer's action." Wise v. Miller Elec. Manuf. Co., No. 20-C-291, 2020 WL 978725, at *2 (E.D. Wis. Feb. 28, 2020) (quoting Mounts v. UPS, No. 09 C 1637, 2009 WL 2778004, at *4 (N.D. Ill. Aug. 31, 2009) and McClendon v. Ind. Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997)). The plaintiff has alleged that after he asked for an accommodation (to be allowed to work only first or second shift), he was denied the right to work. Dkt. No. 1 at 6. These allegations are sufficient, at the motion to dismiss stage, to state a claim for ADA retaliation.

B.  Title VII: Plaintiff's Sex Discrimination Claims

   1.  *Sex discrimination beyond the scope of the EEOC Charge of Discrimination*

A plaintiff may bring claims under Title VII only if he has included those claims in the charge he filed with the EEOC. Cervantes v. Ardagh Grp., 914 F.3d 560, 564 (7th Cir. 2019). This limitation provides the employer notice of the conduct and simultaneously gives the agency an opportunity to attempt conciliation without resort to the courts. Id. That said, a plaintiff may pursue a claim not explicitly included in the EEOC complaint if the allegations fall within

15

the scope of the earlier charges. Ezell v. Potter, 400 F.3d 1041, 1046 (7th Cir. 2005) (quoting Cheek v. Peabody Coal Co., 97 F.3d 200, 202 (7th Cir. 1996)).

To determine whether a federal claim falls within the scope of the EEOC charge, the court asks whether the allegations are like or reasonably related to those contained in the EEOC complaint. Cheek v. W. & S. Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994). The relevant inquiry is "what EEOC investigation could reasonably be expected to grow from the original complaint." Ajayi v. Aramark Bus. Servs., Inc., 336 F.3d 520, 527 (7th Cir. 2003) (internal citation and quotation marks omitted). The court liberally construes the scope of the EEOC charge. Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty., 804 F.3d 826, 831 (7th Cir. 2015).

The plaintiff's former attorney prepared the Discrimination Complaint on the Wisconsin ERD form. Dkt. No. 17-1. In Section 3, which allows a complainant to check up to three boxes for reasons for discrimination, the plaintiff's former attorney checked the box next to "because of my disability" and typed in "Ménétrier's disease & adjustment disorder with anxiety," as well as the box next to "I opposed discrimination in the workplace." Dkt. No. 17-1 at 2. The Statement of Discrimination attached to that ERD complaint is the same one attached to this federal complaint (Dkt. No. 1 at 7). The Statement does not mention sex-based discrimination or sexual harassment. Nothing in the EEOC Charge would have given the defendant notice that the plaintiff was asserting such a claim.

16

### 2. *The sex discrimination claim is time barred*

Even if the plaintiff had mentioned sex discrimination in the Charge of Discrimination, the claim would be time-barred. Title VII also requires that a charge of employment discrimination be filed with the EEOC within 300 days of the alleged unlawful employment practice. 42 U.S.C. §2000e-5(e)(1); Bass, 746 F.3d at 839. The plaintiff cannot proceed on a Title VII claim based on the conduct that occurred before April 6, 2017.

The only allegations of sex discrimination appear on page six of the complaint, where the plaintiff says he had been "sexually harassed," and that "Brian Pullford Manager of Labor relations at JD went so far as to use [the plaintiff's] sexuality to embarrass him into making decisions that would negatively impact [the plaintiff]." Dkt. No. 1 at 6. The plaintiff alleges no other interactions with Polford anywhere in the complaint after the defendant locked him out of work on April 3, 2017. It appears that all the plaintiff's interactions with Polford—the only person he identifies as having sexually harassed him— occurred before the April 6, 2017 cutoff. The plaintiff alleges that by the time he resumed discussions with the defendant about returning to work in December of 2017, Pulford had been replaced by Kennedy. Dkt. No. 1 at 10.

### 3. *The complaint fails to state a claim.*

Even liberally construing the plaintiff's complaint at this early stage, the plaintiff has not stated sufficient facts to pursue a sex discrimination claim. It is not clear whether he is claiming that he was discriminated against because of his gender or his sexual orientation. It is not clear whether he claims specific

17

Case 2:19-cv-00746-PP   Filed 04/15/20   Page 17 of 18   Document 22

acts of discrimination or a hostile work environment. And, as the court has noted, the one act he alleges in this federal complaint is time-barred. The court will grant the defendant's motion to dismiss any claims based on sex discrimination.

## IV.     Conclusion

The court **GRANTS** the defendant's partial motion to dismiss to the extent that the plaintiff may not proceed on any disability discrimination or failure to accommodate claims under the ADA if those claims are based on events that took place prior to April 6, 2017. Dkt. No. 16.

The court **GRANTS** the defendant's partial motion to dismiss to the extent that it seeks dismissal of the plaintiff's Title VII sex discrimination claim. Dkt. No. 16.

If the plaintiff responds to the order to show cause the court will issue contemporaneously with this order, the court will require the parties to submit a Rule 26(f) plan setting deadlines for proceeding on the remaining claims.

Dated in Milwaukee, Wisconsin this 15th day of April, 2020.

                               **BY THE COURT:**

                               **HON. PAMELA PEPPER**
                               **Chief United States District Judge**